United States District Court
Eastern District of New York
--------------------------------------------------------------------X
NY Bakers LLC,

      Plaintiff,

                  - - against - -
Maria Bentania Damota, and Joao Araujo a/k/a Joao
DeAraujo,

      Defendants.
--------------------------------------------------------------------X

Case №
20-cv05291-KAM PEP

**Amended Complaint**

Plaintiff **NY BAKERS LLC** by through its counsel, Biolsi Law Group P.C.

respectfully complains of the Defendants and alleges:

### Nature Of Action

1.  The claims in this action arise from misconduct, breach of actual or implied

contract, breach of fiduciary duty, breach of joint venture, misappropriation of a

business idea, and fraud by Defendants, jointly and severally, causing injury to

Plaintiff in connection with the formation and operation of a wholesale business

engage in, among other things, supplying and selling bread and baked products to

wholesalers and retailers, including, Walmart Inc. for distribution to its stores.

2.  In Spring, 2019, prior to Plaintiff's formation, its founding members

acquainted themselves with Defendants Maria Bentania Damota and Joao Araujo

a/k/a Joao DeAraujo.

3.  In Summer, 2019, Plaintiff's founding members, having already obtained

requisite approval, secured a Vendor Identification, and having already entered in

a vendor relationship to supply baked goods for distribution and sale in Walmart

Inc., explored collaboration, as part of a joint venture, to supply Defendants' bread

and baked products on a wholesale and large-scale level to multi-region and national enterprise retail chains.

4.   Subsequent to the execution of the operating agreement and formation of Plaintiff in September 2019, Defendants breached their obligations owed to Plaintiff and otherwise caused Plaintiff to sustain damages arising from Defendants' actions and omissions.

**Parties**

5.   Plaintiff NY Bakers LLC ("NY Bakers") is a domestic limited liability company duly organized and existing pursuant to the laws of the State Of New York and has its principal place of business located within the County Of Queens, City and State Of New York.

6.   Upon information and belief, Defendant Maria Bentania Damota ("Damota") is an adult resident of the County of Middlesex, State of Massachusetts.

7.   Upon information and belief, Defendant Joao Araujo a/k/a Joao DeAraujo ("Araujo"), is an adult resident of the County of Middlesex, State Of Massachusetts.

8.   Upon information and belief, Defendants are lawfully married.

**Jurisdiction & Venue**

9.   Jurisdiction is properly before this Court pursuant to 28 U.S.C. §1332, based upon the diversity of citizenship of the parties hereto.

10. Plaintiff is a duly organized limited liability company existing in the State of New York.

11. Defendants' citizenship is Massachusetts which, upon information and belief, is the state in which Defendants reside.

12. The amount in controversy exceeds $75,000.

13. The Eastern District Of New York is the proper district for this action pursuant to 28 U.S.C. §1391(a) & (b)(2) because, in addition to the Plaintiff's presence within this district, a substantial part of the events or omissions giving rise to the claims herein occurred within such district, including the negotiations, the transaction, and related events.

**Facts Common To All Causes Of Action**

14. Prior to September 2, 2019, Plaintiff, through its principals, was introduced to Defendant Araujo as being an established baker of superior Brazilian-style crackers, breads and similar products ("Baked Products").

15. Prior to September 2, 2019, Plaintiff was, and still is, a qualified supplier for Walmart Inc.

16. Prior to September 2, 2019, Plaintiff, through its principals, met with Defendants to explore a joint venture enabling the parties herein to supply Baked Products to retailers and wholesalers including Walmart Inc. for distribution and sale of their Baked Products in at least 8 to 10 physical stores initially located in the Northeast.

17. Defendant Araujo is a wholesale and retail baker of, among other things, Brazilian-style breads and similar baked products.

18. Defendant Araujo held himself out as a baker with superior quality of such Baked Products.

19. Defendant Araujo held himself out as having the superior ability to attract and to retain sale and distribution of Baked Products as established by having tested the market in approximately two hundred (200) retail stores in the Boston vicinity.

20. In good faith and in reliance upon Defendants' representations, Plaintiff offered the Walmart Vendor ID to Defendants to foster efficient and expedited entry into the wholesale and Big Box chain retail markets

21. On or about July 14, 2019, Defendant Araujo agreed to explore and to test the large-scale retail chain market by supplying Baked Products to Walmart Inc. using the Walmart Vendor Identification Number already obtained by Plaintiff's founders.

22. Within weeks, Defendant Araujo realized Plaintiff's founders' financial and networking abilities and how such abilities can, collaboratively strengthen and grow Defendants' success.

23. Defendants desired to incorporate such abilities to foster its Baked Products business.

24. On or about August 14, 2019, Plaintiff's founders traveled to Boston to observe Defendants' operations and the recent success related to the Walmart vendor relationship.

25. During the Boston trip, Defendant Araujo provided numerous invoices demonstrating lucrative sales, initially, in approximately 5 physical locations of Walmart around that Boston region.

26. Defendant Araujo provided numerous invoices suggesting gross revenue can potentially reach in excess of Ten Thousand ($10,000) Dollars per week per physical location.

27. Resultantly, Plaintiff's founders and Defendant Araujo proposed the formation of collaborative joint venture to more formally create a business operation to sell Baked Products on a larger scale.

28. On or about August 15, 2019, Plaintiff and Araujo agreed to sell Baked Products developed by Defendants.

29. The parties agreed to expand their joint venture operation to allow for wholesaling to a much larger region, initially expanding into the Tri-State region and Florida, while contemporaneously obtaining new Vendor Relationships with other large-scale, big-box national and international chains.

30. Defendants agreed to disclose recipes for such bakery and bread products to Plaintiff.

31. Defendants agreed to train bakers employed by the parties to make the bread and baked products for distribution to wholesalers and retailers.

32. On or about September 2, 2019 Plaintiff limited liability company was formed.

33. On September 2, 2019, in Queens County, New York, Plaintiff and Defendants agreed that, for a $200,000 Initial Investment for R&D of the Yuka crackers and other breads, and then in staged investments of capital, of Eight Hundred Thousand ($800,000) Dollars in aggregate, investment by Plaintiff to

Defendants, the parties would enter into a joint venture forming a company, EM BAKERS LLC for the purpose of doing business in such name.

34. On September 2, 2019, the parties executed an operating agreement to memorialize their operating agreement; a copy of which is annexed herewith as Exhibit A and fully incorporated herein.

35. On September 2, 2019, EM BAKERS LLC, a New York domestic limited liability company, was formed.

36. EM BAKERS LLC is a joint venture business.

37. The parties agreed that Plaintiff would hold an investment and equity interest of 40% of the joint venture company and that Defendant Damota would hold an investment and equity interest of 57% of the joint venture company (with the balance of 3% held by a non-party baker).

38. Plaintiff tendered $200,000 as agreed.

39. Defendants accepted the $200,000 from Plaintiff conditioned upon the formation of Plaintiff, the execution of the operating agreement, and implementation of the venture; the acknowledged receipt of such funds is annexed hereto as Exhibit B.

40. When Defendants accepted the $200,000 from Plaintiff, Defendants specifically agreed, among other things, to return the $200,000 in the event that the parties "decided not to do business under EM BAKERS LLC."

41. Plaintiff sent apprentice bakers to Boston to work with Defendants to learn the ingredients and techniques for making the Baked Products.

42. Plaintiff paid the travel, lodging, and labor expenses of the apprentice during this learning period.

43. Consistent with the operating agreement, Defendant Araujo was required to teach the apprentice.

44. Defendant Araujo failed to perform as agreed.

45. Defendant Araujo failed to teach the apprentice the complete and accurate baking techniques necessarily required to create the specialty Baked Products.

46. Defendant Araujo failed to teach the apprentice the ingredients and failed to provide true and accurate recipes to create the specialty Baked Products.

47. Upon information and belief, Defendant Araujo wanted to retain proprietary information so that he would retain a heightened value with the company and the joint venture.

48. Defendant's failure to disclose recipes and teach baking techniques caused the Florida bakery operation to falter and fail.

49. Defendant's failure to perform as agreed caused the sales to the Boston area Walmart locations to decrease.

50. Defendants did not disclose the decrease in sales to the Boston area Walmart locations.

51. Instead, Defendants offered duplicate invoices and other statements intending to mislead Plaintiff.

52. Defendants, among other things, falsely inflated sales.

53. Defendants knew their representations of sale were false

54. Defendants knew Plaintiff would rely upon the false representations.

55. Plaintiff reasonably relied upon Defendants' false representations.

56. Plaintiff reasonably relied upon Defendants' false representations to its detriment.

57. Plaintiff continued to invest more capital into the venture based upon Defendants' false representations.

58. Plaintiff relied upon such invoices and statements.

59. Plaintiff relied upon such invoices and statements to its detriment.

60. Defendants, while falsely representing the success of the Walmart sales, suggesting expanding sales into Pennsylvania bakeries conditioned upon Plaintiff's ability to obtain a driver for the delivery routes into Pennsylvania.

61. Plaintiff agreed to the expansion and invested $10,000 in relocation and other initial expenses for the driver of the new routes.

62. Subsequently, Plaintiff learned the expansion into Pennsylvania and the bakery retail locations were not the market size or target that the parties agreed to in their joint venture.

63. Plaintiff also learned that the Baked Products were not being produced at the superior level of quality promised by Defendants.

64. Plaintiff learned that the Baked Products were not being produced at the superior level of quality because Defendant Araujo failed to perform quality control at the Boston bakery facility

65. EM Bakers LLC customers in Florida and Pennsylvania were complaining of taking delivery of bad products rather than the superior quality of Baked Products promised.

66. In November 2019, the parties re-visited their operating agreement and their joint venture.

67. In November 2019, the parties attempted to re-negotiate their relationship because of the now-apparent failing endeavor caused by Defendant's breach of performance and obligations owed to the venture and to the parties.

68. Such renegotiations failed.

69. Within a couple months, the Pennsylvania expansion shuttered and Baked Products to all locations, including Walmart Inc. ceased.

70. Defendants ceased to perform despite due demand.

71. Defendants willfully ceased to perform despite due demand.

72. Plaintiffs have been damaged as a consequence of Defendants' cessation of performance.

73. Soon after September 2, 2019, Defendants failed to deliver products to the Twelve (12) Walmart Inc. locations.

74. Defendants used EM BAKERS LLC revenue and assets to promote and sustain Defendants' independently-maintained customer base consisting of approximately 200 retail bakeries in the Boston Area.

75. Resultantly, the joint venture failed.

76. Defendants caused Plaintiff to sustain losses in excess of $200,000 per month including lost revenue and opportunities.

77. Consequently, Plaintiff has suffered compensatory damages exceeding Eight Hundred Thousand ($800,000) Dollars.

**As And For A First Cause Of Action – Breach Of Contract**

78. Plaintiff repeats and re-alleges each of the allegations contained in the paragraphs hereinabove as if repeated and set fully herein below.

79. As alleged above, Plaintiff invested capital of at least $412,000 on account of the parties venture operating agreement.

80. Defendants accepted all monies received from Plaintiff on account of their agreement and venture, including the initial $200,000 deposit.  Exhibit B.

81. Plaintiff invested in the joint venture based upon Defendants' representations, express and implied.

82. Defendants enjoyed the benefit of all other monies tendered by Plaintiff on account of their agreement and venture, including monies used to purchase equipment and pay labor costs and expenses.

83. Plaintiff reasonably performed all of its obligations on its part to be performed.

84. Defendants refused to perform as agreed.

85. On October 16, 2019, Plaintiff purchased bakery equipment and machines.

86. On October 16, 2019, Plaintiff purchased bakery equipment on account of the agreement.

87. On October 16, 2019, Plaintiff purchased $26,000 bakery equipment consistent with the intentions of the parties  developing the joint venture.

88. Based upon their venture agreement, the parties were able to produce Baked Products for delivery to Walmart Inc.

89. Defendants falsely represented that the Baked Products were being produced and delivered with a short-term expected growth to more than $200,000 in gross receipts of such goods per month.

90. Defendants did not produce the Baked Products as agreed.

91. Defendants did not deliver the Baked Products as agreed.

92. Defendants did not disclose recipes and other information as required by the EM BAKERS LLC operating agreement. *See, e.g.*, Exhibit A, Article 2.

93. Using EM BAKERS LLC capital and assets, Defendant produced Baked Products for sale and distribution to Defendants' independently-maintained Boston area customers.

94. Using EM BAKERS LLC capital and assets, Defendant produced Baked Products for sale and distribution to Defendants' independently-maintained Boston area customers in violation of the terms of the operating agreement. . *See, e.g.*, Exhibit A, Article 2.

95. Defendants failed to perform as agreed.

96. Defendants failed to perform as agreed through no fault of Plaintiff.

97. Defendants failed to perform as agreed despite due demand by Plaintiff.

98. From September, 2019 and continuing for a period of at least Four (4) months, Plaintiff invested in labor costs on account of the venture agreement with Defendants.

99. From September, 2019 and continuing for a period of at least Four (4) months, Plaintiff invested in supplies, materials, and equipment on account of the venture agreement with Defendants.

100.	On July 27, 2020, among other dates, Plaintiff caused written demands to be delivered to Defendants demanding, among other things, an accounting of invested proceeds and a disclosure of recipes for bread and baked goods.

101.	Defendants willfully, wantonly, and recklessly failed to perform.

102.	Defendants tarnished the Vendor Relationship with Walmart Inc.

103.	Plaintiff have suffered damages as a result of Defendants' refusal to perform as agreed of at least $412,000.

104.	Plaintiffs are entitled to a compensatory award in an amount to be determined at trial, which amount is believed to be not less than $412,000.

**As And For A Second Cause Of Action – Fraud**

105.	Plaintiff repeats and re-alleges each of the allegations contained in the paragraphs hereinabove as if repeated and set fully herein below.

106.	Defendants falsely represented to Plaintiff a desire to form and operate a joint venture as specifically alleged above.

107.	Defendants knew their representations were false.

108.	Plaintiff justifiably relied upon Defendants' false representations.

109.	On October 3, 2019, October 4, 2019, October 23, 2019, October 24, 2019, October 30, 2019, and at other times, Defendants falsely represented sales and other profit figures in an effort to lure Plaintiff into believing that the joint venture was growing and had the potential to exceed $10,000 in gross revenue per location.

110.        On or about November 14, 2019, Defendant Araujo communicated via electronic messaging service to Plaintiff's principal to submit Invoice 227432 to Walmart for payment of $1,028.82.

111.        On or about November 14, 2019, Defendant Araujo communicated via electronic messaging service to Plaintiff's principal to submit Invoice 227432 to Walmart for payment of $1,028.82 because of Baked Products being delivered to Walmart produced by the joint venture.

112.        Plaintiff agreed and submitted the invoice.

113.        Defendant prepared the invoice knowing that neither produced nor delivered Baked Products for Walmart.

114.        Defendant communicated the false invoice knowing that Plaintiff and its principal would rely upon the communication.

115.        Defendants had no intention of prepare baked products for the benefit of the joint venture.

116.        Defendants knew that Plaintiff would rely upon the false invoices and false communications which misrepresented false and fictitious sales.

117.        Defendants knew that Plaintiff would be misled and would have the false impression of success and revenue generation.

118.        Plaintiff reasonably relied upon the communication.

119.        Plaintiff relied upon the communication.

120.        Plaintiff relied upon the communication to its detriment.

121.        Among other things, Plaintiff continued to invest in the joint venture because of the fake and fictitious sales.

122.    Defendants false representations also included duplicating sales invoices.

123.    Defendants provided duplicate invoices to create the illusion of successfully profitable volume.

124.    On or about October 3, 2019, Defendant Araujo communicated to Plaintiff's principal via electronic messaging or other Internet-based communication, that Invoice 224694 needed to be submitted for sales even though Defendant knew that his Invoice had already been submitted for payment.

125.    On or about October 4, 2019, Defendant Araujo communicated to Plaintiff's principal via electronic messaging or other Internet-based communication, that Invoice 224711 needed to be submitted for sales even though Defendant knew that his Invoice had already been submitted for payment.

126.    On or about October 23, 2019, Defendant Araujo communicated to Plaintiff's principal via electronic messaging or other Internet-based communication, that Invoice 224738 needed to be submitted for sales even though Defendant knew that his Invoice had already been submitted for payment.

127.    On or about October 24, 2019, Defendant Araujo communicated to Plaintiff's principal via electronic messaging or other Internet-based communication, that Invoice 224726 needed to be submitted for sales even though Defendant knew that his Invoice had already been submitted for payment.

128.    On or about October 30, 2019, Defendant Araujo communicated to Plaintiff's principal via electronic messaging or other Internet-based

communication, that Invoice 224718 needed to be submitted for sales even though Defendant knew that his Invoice had already been submitted for payment.

129.    On or about November 13, 2019, Defendant Araujo communicated to Plaintiff's principal via electronic messaging or other Internet-based communication, that Invoice 2246681 needed to be submitted for sales even though Defendant knew that his Invoice had already been submitted for payment.

130.    The duplicate submission of these invoices were knowingly fictitious representations of sale intended to fictitiously inflate the appearance of success and revenue stream.

131.    On or about the dates indicated below, not being all-inclusive, Defendant Araujo communicated to Plaintiff's principal via electronic messaging or other Internet-based communication, that Invoices indicated below needed to be submitted for sales to Walmart even though Defendant knew that these Invoices were created by Defendant and was false and fictitious and did not represent real or actual sales to Walmart; to wit:

|   | Date | Invoice | Amount |
|---|------|---------|--------|
| a | September 25, 2019 | 224666 | $502.24 |
| b | September 26, 2019 | 224653 | $512.20 |
| c | September 26, 2019 | 224668 | $205.50 |
| d | September 27, 2019 | 224680 | $117.00 |
| e | September 30, 2019 | 224688 | $174.00 |
| f | October 1, 2019 | 224667 | $507.38 |
| g | October 9, 2019 | 224705 | $462.60 |
| h | October 17, 2019 | 224692 | $243.50 |
| i | October 25, 2019 | 224734 | $118.80 |
| j | October 25, 2019 | 224749 | $87.00 |
| k | October 29, 2019 | 224742 | $315.50 |
| l | October 30, 2019 | 224733 | $344.10 |
| m | November 7, 2019 | 224755 | $87.00 |
| n | November 12, 2019 | 224753 | $566.40 |

| o | November 13, 2019 | 224676 | $317.30 |
| p | November 13, 2019 | 224751 | $69.60 |
| q | November 14, 2019 | 224680 | $117.00 |
| r | November 14, 2019 | 224758 | $283.20 |
| s | November 18, 2019 | 224756 | $297.00 |
| t | November 20, 2019 | 224762 | $208.80 |

132.    Defendants knew these invoices were fake.

133.    Defendants knew their representations were false.

134.    Defendants knew Plaintiff would rely upon these false representations.

135.    Plaintiff relied upon Defendants false representations.

136.    Defendants accepted monies from Plaintiff based upon their false representations.

137.    Defendants knowingly misrepresented sales of operations, among other reasons, to entice Plaintiff into increasing investment in the joint venture to foster growth.

138.    Additionally, Defendants commingled funds generated from the operations of the joint venture and Defendants' other companies' and personal finances.

139.    Upon information and belief, Defendants commingled funds with their Automobile Dealership/Rental Company.

140.    Defendants diverted EM BAKERS LLC's funds to their other companies, including their Automobile Dealership/Rental Company.

141.    Defendants knew that false representations to Plaintiff would permit Plaintiff to invest capital into EM BAKERS, LLC so that Defendants could divert or

otherwise funnel such capital or return on capital to Defendants' companies, including their Automobile Dealership/Rental Company.

142.     Plaintiff sustained injuries of at least $412,000.

143.     Plaintiff is entitled to a monetary judgment against the Defendants of at least $412,000 to be determined upon a trial of this action.

## As And For A Third Cause Of Action - Conversion

144.     Plaintiff repeats and re-alleges each of the allegations contained in the paragraphs hereinabove as if repeated and set fully herein below.

145.     The Parties agreed that Plaintiff's investment was to be deposited into an EM BAKERS LLC corporate bank account.

146.     Rather than deposit investment funds into the account as agreed, Defendants wrongfully deposited the monies into a bank account used for their purposes.

147.     Rather than rightfully deposit revenues generated from the operations of the venture, Defendants wrongfully deposited the monies into a bank account used for the exclusive use of Defendants.

148.     Defendants exercised dominion and control over such bank account.

149.     Defendants wrongfully exercised dominion and control over such bank account.

150.     Defendants exercised dominion and control over such bank account Plaintiff's detriment.

151.     Defendants wrongfully refused to account for the investment funds.

152.    Defendants refused to account for the investment funds dispute due demand.

153.    Defendants refused to deliver or to return Plaintiff investment funds upon a termination of the EM BAKERS LLC venture.

154.    As alleged above, the Parties agreed to proportionately share the revenues of EM BAKERS LLC.

155.    Defendants collected revenues generated from sales of EM BAKERS LLC.

156.    Defendants exercised dominion and control over such revenues.

157.    Defendants failed to account for revenues.

158.    Defendants failed to account for revenues dispute due demand.

159.    Defendants wrongfully diverted investment funds and revenues of EM BAKERS LLC

160.    Defendants wrongfully converted these funds to their own use.

161.    Defendants wrongfully converted these funds to finance the operations of their independently-maintained Boston area customer sales.

162.    Defendants converted these funds to finance Defendants' other businesses.

163.    Plaintiff cannot determine the magnitude of the conversion at this early juncture; however such conversion is believed to exceed $412,000 in value.

164.    Plaintiff sustained injuries of at least $412,000.

165.    Plaintiff seeks an accounting as part of the relief sought as part of this cause of action.

166.    Plaintiff is entitled to a monetary judgment against the Defendants of at least $412,000 to be determined upon a trial of this action.

167.    Plaintiff respectfully demands trial by jury.

*Wherefore,* Plaintiff respectfully demands judgment against Defendants, jointly and severally, as follows:

1) That, on the first cause of action, the Plaintiff have judgment against Defendants, jointly and severally, awarding compensatory damages in an amount to be determined at trial, which amount is believed to be not less than $412,000; and,

2) That, on the second cause of action, Plaintiff have judgment against Defendants, jointly and severally, awarding compensatory damages in an amount to be determined at trial, which amount is believed to be not less than $412,000; and,

3) That, on the third cause of action, Plaintiff have judgment against Defendants, jointly and severally, awarding compensatory damages in an amount to be determined at trial, which amount is believed to be not less than $412,000; and,

4) That Plaintiff be awarded and recover its costs, including reasonable attorneys' fees and expenses in an amount and manner permitted by applicable law; and

5) That Plaintiff be granted such other and further relief as this Court may deem just and proper.

Dated:     New York, New York
              January 28, 2021

Biolsi Law Group P.C.

_____
By: Steven Alexander Biolsi
Attorney for Plaintiff NY Bakers LLC
111 Broadway, Suite 606
New York, NY, 10006
212-706-1385
Fax 718-504-6427 (for Court's use Only)
sabiolsi@sabiolsi.com

United States District Court
Eastern District of New York                    **Case: 20-cv-05291-KAM-SMG**

NY Bakers LLC,

     Plaintiff,


- - against - -

Maria Bentania Damota, and Joao Araujo a/k/a Joao DeAraujo,

     Defendants.


Amended Complaint


Biolsi Law Group
111 Broadway, Suite 606
New York, NY 10006
(212) 706-1385
sabiolsi@sabiolsi.com


By:  Steven Alexander Biolsi Attorneys for Plaintiff NY Bakers LLC


I, Steven Alexander Biolsi, an attorney duly admitted to practice law before the Courts of this State, hereby certify that pursuant to 22 NYCRR § 130-1.1a that to the best of my knowledge, information and belief, formed after inquiry reasonable under the circumstances, the presentation of the papers annexed hereto or the contentions therein are not frivolous as defined in 22 NYCRR § 130-1.1(c).

New York, New York
January 28, 2021

Steven Alexander Biolsi